





## IN THE US DISTRICT COURT OF MARYLAND

### 6500 Cherrywood Land

### Greenbelt, Maryland 20770

USDC- GREENBELT
'23 SEP 1 AM 9:27

| PLAINTIFF | ) | DEFENDANT |
|---|---|---|
| Saul Elbaum | ) | GOOGLE, INC. |
| | ) | 1600 Amphitheatre Parkway |
| | ) | Mountain View, CA 94043 |
| | ) | Tel: (650) 253-0000 |
| | ) | |
| | ) | Attorney: Nathan Mendelsohn |
| 11924 Gainsborough Rd. ` | ) | Wilson Sonsini Goodrich & Rosati |
| Potomac, MD 20854 | ) | 1700 K Street NW, 5th Floor |
| | ) | Washington, DC 20006 |
| Tel. (301) 838-0450 | ) | Tel: (202) 791-8030 |
| Saulelbaum@gmail.com | ) | nmendelsohn@wsgr.com |

BASIS OF JURISDICTION: Diversity

CITIZENSHIP OF PRINCIPAL PARTIES:

Plaintiff: Citizen of state of Maryland

Defendant: Incorporated in state of California

NATURE OF SUIT: Contract

ORIGIN: Original Preceding

CAUSE OF ACTION: Defendant repeatedly withdrew money from Plaintiff's bank account without notice of each withdrawal.

REQUESTED IN COMPLAINT: Actual damages of $10,500 plus punitive damages of $1.21 billion. Jury not requested.

RELATED CASES:

My initial suit against defendant Google for $10,000 plus punitive damages was dismissed by the Circuit Court of Montgomery County, Maryland without a hearing on the merits (Case No. 487031v).

Subsequently, the Maryland Court of Special Appeals (Case No. CSA-REG-1796-2021) ruled against me on $8,500. That court also issued an *Unreported per curiam* opinion (enc. 1) in which it declined to rule on four issues relating to Google's selling practices. Those issues are the basis for this legal action.

9/1/23

_____

Date

_____

Signature

2

## CAUSE OF ACTION:

The following issues relating to Google's selling practices are the basis for this legal action.

### A SUMMARY OF THE ISSUES:

1. Whether Google should be permitted to run an ad while it is in draft-incomplete mode, and to repeatedly withdraw funds from my bank account, without providing me notice of each ad and each withdrawal;

2. Whether Google should be permitted to repeatedly run the same ad multiple times, and repeatedly withdraw money from my bank account, without providing me notice of each withdrawal;

3. Whether Google's actions should be adjudicated in Maryland despite Google's contract limiting jurisdiction to California;

4. Whether Google's actions justify punitive damages.


### A COMPLETE STATEMENT OF THE ISSUES:

### ISSUE #1: WHETHER GOOGLE SHOULD BE PERMITTED TO REPEATEDLY RUN AN AD, AND REPEATEDLY WITHDRAW MONEY FROM MY BANK ACCOUNT, WITHOUT PROVIDING ME NOTICE OF EACH AD AND EACH MONEY WITHDRAWAL

## 1a. The First Withdrawal of Money Without Notice

Google maintains an unusual practice - they withdraw money from a customer's bank account <u>without notifying the customer of each withdrawal</u>. They did this to me on two occasions.

On the first occasion I was travelling abroad, and I did not know that my ad was running. Had Google sent me an email each time they withdrew $500 from my bank account, I would have known that my ad was running, and I would have stopped it – <u>in which case this entire dispute would never have taken place</u>.

Google continued to withdraw each of these $500 amounts without notice until they withdrew a total of $8,500 from my bank account - at which point my bank account ran out of money. That's when Google "remembered" me and sent me an email asking for more money. If Google could send me an email after all my money was gone, why couldn't they have sent me an email after each $500 withdrawal?

Google's answer is simple – their contract does not require such notices because the duty to give timely notice "exists nowhere in the Terms of Service contract" (enc. 2).

Google further supports its position based on *Howard Oaks, Inc. v. Md. Nat'l Bank* (810 F. Supp. 674, 677 (D. Md. 1993). But that decision is a very old case about a dispute between a bank and a large corporation. It can hardly be applied to a dispute between a small business entity and a major company like Google, especially since Google refuses to negotiate the terms of its contracts.

4

## 1b. The Second Withdrawal of Money Without Notice

About one year after the above event, I received a telephone call from a Google salesperson inviting me to try selling on Google again. Despite my better judgment, I decided to try it one more time. I proceeded to draft an ad which required a description of the product, its price, the size of the audience to be reached, the geographic location of the audience, and my daily budget.

But there were two important items that Google did not require: when should the ad begin and how long should it run? Ads in all printed publications require this information as a precondition to placing an ad. So why doesn't Google ask?

Since I needed more time to compose my ad, I logged off with intent to resume the ad process at a later time. I never found the time and I never completed the ad.

Despite that, Google just started running my incomplete ad, and continued running it, without providing me notice of each withdrawal. It was not until my monthly bank statement arrived in the mail that I discovered four Google charges of $500 each (enc 3).

## ISSUE 2: WHETHER GOOGLE'S ACTIONS SHOULD BE ADJUDICATED IN MARYLAND DESPITE GOOGLE'S CONTRACT LIMITING JURISDICTION TO CALIFORNIA

In traditional business selling it is well established that a seller can limit forum selection to his own state. But Google is not a traditional business seller.

5

Google does internet business in every state. That's why it should be subject to jurisdiction in every state.

Google's practice is very unfair to small business customers who can't afford to travel to California to resolve disputes. Google's second withdrawal of money from my bank account involved a dispute of only $2,000. The cost of travel to California would use up the entire amount of this dispute.

## 2a. The Supreme Court of Canada

The issue of forum selection for a company that conducts its entire business on the internet was recently decided by the seven-member Supreme Court of Canada in Douez v. Facebook Inc., [2017] 1 SCR 751, 2017 SCC 33 (CanLII). That court held that an internet seller who does business in Canada can be sued in Canada despite its written agreement limiting jurisdiction to California. While a Canadian Supreme court decision doesn't establish legal precedence in the U.S., the reasoning behind this decision does deserve consideration in this case.

## 2b. South Dakota v. Wayfair

The recent U.S. Supreme Court decision in South Dakota v. Wayfair (2017 S.D. 56, 901 N. W. 2d 754) offers direct insight into the issue of forum selection in our country. This decision changed a law that previously enabled retailers to avoid filing and paying sales taxes in those states in which they did not maintain a physical presence. As a result of this new ruling, internet sellers are

6

now required to pay retail sales taxes in states where they make substantial sales despite not having a physical presence in those states.

Now that the law obligates sellers to pay sales taxes in states where they have no physical presence, shouldn't those sellers also become obligated to address disputes in those states as well? This Supreme Court decision offers an opportunity to rule that my case against Google may be heard in Maryland.

**ISSUE #3: WHETHER GOOGLE SHOULD BE LIABLE TO PAY MY DIRECT DAMAGES**

My direct damages are $2,000 for the period August 24, 2021 to September 24, 2021, plus an additional $8,500 for the period October 3, 2016 to February 7, 2017. Although the $8,500 dispute has been resolved in Google's favor based on the previous Appellate Court opinion (enc. 1), the $8,500 expense should remain as part of punitive damages (see below).

**ISSUE #4: WHETHER GOOGLE'S ACTIONS JUSTIFY PUNITIVE DAMAGES**

Google repeatedly violated the underlying duty of trust and confidence that should exist between contractual parties, especially when one of those parties is a multi-billion-dollar company and the other is a small business entity.

One might understand if Google's failure to notify me after each withdrawal was a case of oversight or aggressive lawyering. One could understand that once Google became aware of this practice, they would have discontinued it. But they didn't, they haven't, and they won't, until they are punished.

The purpose of punitive damages is to punish a defendant and to deter similar acts against others. Google's practice of repeatedly withdrawing money

from my bank without giving me notice of each withdrawal is malicious and inexcusable. It is in complete disregard of my rights as a customer.

If Google is not punished, they will continue their practice of taking money without notice, and they will continue to abuse people who can't afford to defend themselves. More importantly, they will set an example for other cheaters to do the same.

### ISSUE 5. THE LEVEL OF PUNITIVE DAMAGES

In 2020 Google earned a net income of $40.26 billion (enc. 4). A penalty of 3% of Google's net income would come to $1.21 billion.

That's a lot of money, but a lot of money is what it will take to get the attention of Google at its California headquarters. And equally important, the punitive damages should be high enough to get the attention of every other company that may be tempted to follow Google's practices.

Google should be required to refund my loss of $2,000.

Google should be required to pay me the $8,500 they withdrew in quantities of $500 without notice.

Google should be put on notice that customers who have been cheated can bring suit in Maryland as well as in California.

Google should be required to pay punitive damages of an amount large enough to discourage them from cheating like this again.

8

## 6. SUMMARY

Google should be required to refund my recent loss of $2,000.

Google should be required to refund the $8,500 they took in multiple quantities of $500 without providing notice of each withdrawal.

Most importantly, Google should be required to pay punitive damages large enough to get the attention of other vendors who may be tempted to follow Google's practices.

Date of signing ___9/1/23___ 2023

Signature of Plaintiff _____

Printed name of Plaintiff SAUL ELBAUM

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:  (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Date of signing ___9/1/23___ 2023

Signature of Plaintiff (attorney) _____

Printed name of Plaintiff (attorney) _SAUL ELBAUM_

Maryland Bar No. 6912010056

Address: 11924 Gainsborough Road, Potomac, MD 20854

Email Address: saulelbaum@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on this ___1st___ day of ~~August~~ Sept 2023 a copy of this document was served, by first class mail, postage prepaid, on Wilson Sonsini Goodrich & Rosati, 1700 K Street N.W., 5th Floor, Washington, DC 20006.

A copy was also served on CSC, 1090 Vermong Ave. NW, Suite 430, Washington, DC 20005.

_____

Saul Elbaum, Plaintiff

11924 Gainsborough Road

Potomac, MD 20854

Tel. 301-838-0450

saulelbaum@gmail.com

10